UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WaterLegacy<br>1961 Selby Ave.<br>St. Paul, MN 55104<br><br>   *Plaintiff,*<br><br>U.S. Environmental Protection Agency<br>1200 Pennsylvania Ave NW,<br>Washington, DC 20004<br><br>   *Defendant.* | CIVIL ACTION NO. 19-412<br><br>**COMPLAINT** |

   1.   Plaintiff WaterLegacy ("Plaintiff") brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, as amended, to compel the U.S. Environmental Protection Agency, ("EPA" or "Defendant") to disclose records wrongfully withheld in failing to respond within the statutory deadline to Plaintiff's FOIA request.

## PARTIES

   2.   Plaintiff, WaterLegacy, is a non-profit organization incorporated under the laws of Minnesota.

   3.   WaterLegacy's mission is to counter the threat of sulfide mining in Northern Minnesota. It collaborates with partners across the region to protect against the concern that sulfide mining would destroy wetlands, wildlife, habitats and wild rice, contaminate water with toxic metals, increase mercury levels in fish, and impair tribal rights. Since 2009, it has grown to over 9,000 supporters and has

facilitated the filing of over 45,000 citizen comments and other actions to protect the waters of Minnesota.

4. As part of its mission, WaterLegacy is an active participant in environmental review and permitting for proposed mining sites overseen by Defendant.

5. Defendant, EPA, is an agency of the United States as defined by 5 U.S.C. § 552(f)(1). EPA is a federal agency that, *inter alia*, is responsible for review and oversight of state implementation of the National Pollutant Discharge Elimination System and State Disposal System (NPDES/SDS) under § 402 of the Clean Water Act. 33 U.S.C. § 1342.

6. Defendant is charged with the duty to provide public access to records in its possession consistent with the requirements of FOIA. Here, Defendant is denying Plaintiff access to its records in contravention of federal law.

## STATEMENT OF FACTS

7. For the last several years, regulatory review has been ongoing for PolyMet Mining's planned copper-nickel mine in northern Minnesota called the "NorthMet" mine. The mine site and processing plant are planned to occupy approximately 19,000 acres (30 mi$^2$) in the St. Louis River basin, 175 river miles upstream from Lake Superior.

8. NorthMet would create a permanent source of effluent contamination in the St. Louis River and Lake Superior and is anticipated to destroy approximately 900 acres of wetlands.

9. For almost a decade, EPA has conducted review of certain regulatory materials prepared by PolyMet and its agents, and by the Minnesota Department of Natural Resources (MDNR), the Minnesota Pollution Control Agency (MPCA), the U.S. Forest Service, and the U.S. Army Corps of Engineers. Throughout this period, and at the request of MDNR and other co-lead agencies in conducting environmental review of NorthMet, EPA, as a cooperating agency, has provided written comments and recommendations to assist co-lead agencies in preparing environmental review materials. EPA stated in a letter confirming the request for EPA's written assistance dated August 7, 2013, that it "expects downstream water quality standards to be considered and protected throughout the NPDES permitting process."

10. On April 7, 2015, EPA memorialized by email an agreement it had reached with MPCA to defer commenting on the Environmental Impact Statement drafts prepared for the NorthMet site until the process of NPDES permitting began. EPA expressed its expectation that any NPDES permit which ultimately issued would comply with the Clean Water Act and regulations. Collected emails between EPA and state regulators are attached as <u>Exhibit A</u>.

11. On November 3, 2016, EPA further explained that any legally sufficient NPDES permit must cover or prohibit all discharges from NorthMet point sources to surface waters, including those through ground water hydrologic connection. These would be the last written comments made by EPA on the record

concerning the NorthMet mine. Ex. A 6-12. Five days later, on November 8, Donald Trump was elected President of the United States.

14. Throughout 2017 and 2018, staff in EPA's Region 5 Office which was overseeing the NorthMet project verbally expressed substantive concerns about the draft NPDES water pollution permit and its ability to protect water quality in Lake Superior watersheds. These concerns were expressed over the phone or in person to employees of MPCA, who memorialized them in handwritten notes, attached in full as Exhibit B.

13. MPCA notes indicate that the Region 5 staff wanted to provide comments in writing in the administrative record for the NPDES permit for NorthMet; yet they repeatedly failed to do so.

14. On November 1, 2017, MPCA staff memorialized one such oral conversation as: "EPA wants to send a letter prior to PN [public notice of the draft permit]," putting its comment in the record. Ex B. But an email from EPA a few weeks later, on November 20, 2017 suggests that something had changed, and that EPA Region 5 staff would not send a letter prior to the Draft NPDES water pollution permit but would wait to send EPA comments "until after we have a chance to review the draft." Ex A 13.

15. The draft NPDES permit was released in January 2018, with a comment period ending on March 16, 2018.

16. MPCA handwritten notes from January through March 2018 document substantial concerns voiced by EPA staff about the draft NPDES permit, including the lack of water quality based effluent limits in the permit. Ex B.

17. MPCA notes also indicate that EPA was concerned that proposed monitoring of pollutants discharged through a groundwater pathway might be inadequate to determine Clean Water Act compliance. Region 5 was, according to those notes, concerned about the effects of increased mercury on downstream communities. Notes dated March 5, 2018 state: "EPA wants to submit comments – Make clear what EPA concerns are. Clarify permit conditions." Ex B.

18. At the close of the comment period, in a March 16, 2018 email, EPA again put off submitting written comments, but stated that once the *Final* NPDES permit was in its "pre-proposal" stage, Region 5 EPA would have 45 days to "provide written comments" to MPCA. Ex A 14-16.

19. MPCA notes from October 22, 2018 indicate that EPA planned to review the final NorthMet permit during its 45-day oversight period and that "EPA will focus review on proposed language re WQBELs [water quality based effluent limits]." Ex B.

20. On October 25, 2018, MPCA informed the public that the Agency had sent a revised PolyMet NorthMet water pollution permit to EPA "as part of the federal oversight" of state permits, that "EPA will be reviewing the permits in the coming weeks" and that the MPCA would make its decisions on the final permit after considering EPA feedback. Ex A 17-18.

21. Despite assurances that EPA comments would be forthcoming in this period, MPCA received no written EPA feedback on the PolyMet permit, according to an email from MPCA dated December 17, 2018.

22. On information and belief, EPA finalized written comments on the draft NorthMet permit on or about March 2018 but never transmitted them to MPCA.

23. In addition, on information and belief, on or about April 2018, EPA read these finalized written comments to MPCA staff and retained a highlighted or annotated copy memorializing what was read to MPCA.

Plaintiff's FOIA Request

24. On October 19, 2018, Plaintiff requested by email "a copy of the EPA Region 5 final comments on the draft NPDES permit proposed by the Minnesota Pollution Control Agency for the PolyMet project in January 2018 (Minnesota Permit No. MN0071013)." EPA Region 5 counsel informed Plaintiff that the request would be "converted to a FOIA request (that will happen here, you don¹t need to do anything) and then you will receive a response. i'm not completely sure on timing, but this is a very simple request, so a response should not take very long." [sic]. Correspondence concerning the FOIA request between Plaintiff and Defendant is attached as Exhibit C.

25. On October 23, 2018, EPA requested that Plaintiff agree to a processing fee commitment of $25.00, which was agreed to the same day. Ex C 3. At that point the FOIA request was complete and processing should have begun.

26.     On December 3, 2018, counsel for EPA informed Plaintiff that they could not locate the fee commitment from October 23 and had not begun processing the request. Plaintiff then replied that it had already agreed to such a commitment and re-delivered the original October 23, 2018 fee commitment. Ex C 5.

27.     Later on December 3, 2018, Plaintiff was copied on correspondence between EPA employees discussing whether the materials requested by FOIA could be delivered as an email attachment to Plaintiff immediately and uploaded later to the FOIA Online system which EPA uses to manage its FOIA requests, because staff was "sure there will be no fees associated with this request." Ultimately Region 5 staff determined that they could not release the materials until after they "go through the regional review process and the FOIA online system." The FOIAOnline system delivered Plaintiff a confirmation the same day. Ex C 8-11.

28.     On January 30, 2019, Plaintiff asked EPA Region 5 staff who had previously corresponded about this request discussed how it could be accelerated. After notifying the "Water Division" who were custodians of the document, EPA counsel informed Plaintiff that "the FOIA is inhouse and was being processed when the shut down interrupted.  i don't have a new due date (the original FOIA was due on january 2, 2019, i believe), and now that the government has reopened, every effort is being made to provide a timely response." [sic]. Ex C 12-15.

29.     Defendant has not produced any documents or issued any further determinations, communications, information, or notices to Plaintiff since the January 30, 2019 email.

30. On information and belief, production in response to Plaintiff's FOIA request is being indefinitely delayed due to its "elevation" to EPA HQ in Washington, DC in response to increasing press attention to the process by which the NorthMet NPDES permit was approved. See, e.g., Jennifer Bjorhus, *Former EPA lawyer challenges regulators on PolyMet water permit*, STAR TRIBUNE (Feb. 6, 2019), http://www.startribune.com/regulators-challenged-on-polymet-water-permit/505466782/; Dan Kraker, *Federal judge lifts hold on lawsuits against PolyMet mine; other challenges continue*, MINN. PUB. RADIO NEWS (Jan. 31, 2019), https://www.mprnews.org/story/2019/01/31/fed-judge-lifts-hold-on-lawsuits-against-polymet-mine.

## CAUSE OF ACTION

31. Plaintiff incorporates and restates the allegations of the preceding paragraphs as though fully set forth herein.

32. The FOIA requires federal agencies to respond to public requests for records, including files maintained electronically, to increase public understanding of the workings of government and to provide access to government information. FOIA reflects a "profound national commitment to ensuring an open Government" and agencies must "adopt a presumption in favor of disclosure." Presidential Mem., 74 Fed. Reg. 4683 (Jan. 21, 2009).

33. The FOIA requires agencies to make a determination on a FOIA appeal within twenty working days after its receipt. 5 U.S.C. § 552(a)(6)(A)(ii). Agencies may extend this twenty-day time period only upon written notice of

"unusual circumstances," and then for no longer than ten days. 5 U.S.C. § 552(a)(6)(B).

34. To date, Defendant has not indicated that any "unusual circumstances" existed regarding this FOIA request. It has not specified what documents it is reviewing, their volume, or a timetable for any "rolling" review or production.

35. Defendant has instead indicated on multiple occasions that this was a "simple" request that should not take long or incur any processing costs.

36. To date, Defendant has failed to make a final determination on, or produce any documents in response to, Plaintiff's October 23, 2018 FOIA request.

37. Even assuming it was proper to reset the date on which Plaintiff's FOIA request was "submitted" to December 3, 2019, when EPA claims to have first received Plaintiff's commitment to pay a processing fee of $25.00 (although that commitment was actually sent on October 23, 2018), Ex. C 3-5, Defendant's twenty-day time period to respond to the request expired on January 2, 2019. See Ex C 12-15; see also FOIAONLINE, EPA-R5-2019-001800 REQUEST DETAILS (last visited February 12, 2019), https://foiaonline.gov/foiaonline/action/public/submissionDetails?trackingNumber=EPA-R5-2019-001800&type=request.

38. Defendant's conduct amounts to a denial of Plaintiff's FOIA request.

39. Defendant is frustrating Plaintiff's efforts to inform the public about EPA's consideration of permitting and regulatory matters and how practices have

changed regarding the submission of written comments critical of state agencies. This refusal to comply with statutory obligations under FOIA is particularly troubling given the substantial public attention which has been paid to the NorthMet mine site in particular, and to EPA's cooperative federalism policies generally under Acting Administrator Andrew Wheeler.

40.     Defendant's failure to respond to this FOIA request is also frustrating litigation concerning the NorthMet NPDES permit by withholding documents which litigants claim are necessary to complete the full administrative record considered by MPCA staff when they were related to them verbally by EPA Region 5 staff. The handwritten notes contained in Exhibit B summarize EPA's concerns in brief, but the full prepared comments which were read to and considered by MPCA only appear in the unreleased written EPA comments.

41.     Administrative remedies are deemed exhausted when an agency fails to comply with the applicable time limits. 5 U.S.C. § 552(a)(6)(C)(i). Plaintiff constructively exhausted its administrative remedies when EPA failed to produce a determination on January 2, 2019, 20 working days after Defendant's request was finalized within FOIAOnline, and now seeks an order from this Court requiring Defendant to immediately produce the records sought in Plaintiff's FOIA request, as well as other appropriate relief, including attorneys' fees and costs.

## JURISDICTION AND VENUE

42. This Court has jurisdiction over this action under 5 U.S.C. § 552(a)(4)(B). This Court also has federal question jurisdiction over this action under 28 U.S.C. § 1331.

43. This Court has the authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*

44. This Court is a proper venue because Defendant is a government agency that resides in the District of Columbia. *See* 28 U.S.C. § 1391(e)(1)(A) (where defendant is the government or a government agency, a civil action may be brought in the district where the defendant resides). Venue is also proper under 5 U.S.C. § 552(a)(4)(B) (providing for venue in FOIA cases where the plaintiff resides, where the records are located, or in the District of Columbia).

45. This Court has the authority to award reasonable costs and attorneys' fees under 5 U.S.C. § 552(a)(4)(E).

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

   i. Enter an order declaring that Defendant wrongfully withheld requested agency records;

   ii. Issue a permanent injunction directing Defendant to disclose to Plaintiff all wrongfully withheld records;

   iii. Maintain jurisdiction over this action until Defendant is in compliance with the FOIA and every order of this Court;

iv. Award Plaintiff attorney fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E); and

v. Grant such additional and further relief to which Plaintiff may be entitled.

Respectfully submitted on February 19, 2018,

/s/  Paula Dinerstein
Paula Dinerstein, DC Bar # 333971
Public Employees for Environmental Responsibility
962 Wayne Ave, Suite 610
Silver Spring, MD 20910
(202) 265-7337
pdinerstein@peer.org

*Counsel for Plaintiff*